The fourth district appellate court of the state of Illinois has reconvened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Our second case this afternoon is 424-1510, State of Illinois v. Jose A. Gamboa. Council for the appellant, please state your name. My name is Rebecca Levy from the Office of the State Appellate Defender on behalf of Mr. Jose Gamboa. Thank you. Council for the appellate, please state your name. Matthew Goldman on behalf of the people. Thank you, Council. Ms. Levy, on behalf of the appellant, you may proceed with your argument. Good afternoon. May it please the court and council. I'm going to focus my argument today on the first two issues I raised in my opening brief. And if I have time, briefly address the third in order to explain to this court why it should reverse Mr. Gamboa's conviction for sexual assault or alternatively reverse his conviction for criminal sexual assault and remand for a new trial. First, the state failed to prove Gamboa guilty beyond a reasonable doubt of criminal sexual assault where there's no evidence that he used or threatened the use of force. In order to prove Gamboa guilty of criminal sexual assault, the state needed to show that he used force, threatened force, or overcame MG by the use of superior size or strength, physical restraint, or physical confinement. And the state did not make that showing in this case. The extent of MG's testimony on this element was that Gamboa never threatened her with force or anything else, but she was afraid that if she resisted, he would kick her out and she did not want to go back to living in a homeless shelter. MG also said she could not get up when Gamboa was on top of her because he was physically bigger than her. But even when the offender happened... Excuse me. Good afternoon, counsel. Would you not agree that certainly physical force doesn't have to be used in order to have evidence of force? Isn't that correct? Well, physical force doesn't have to be used if the defendant, if the complainant is either physically confined or constrained, or the offender uses his superior strength or size to overcome the complainant as well. And here, while... And here we know he was, the defendant here, certainly was bigger than she. We don't know her size. She said he was bigger, yes. Pardon? She said he was bigger, yes. And she also testified that she could not get up. She was fearful that she couldn't get up. Isn't that correct? She testified that she didn't think she'd be able to get up because he was physically bigger than her. But the fact that she thought that she couldn't get up and leave... She also specifically stated that she never tried to end the interaction or that she was unable to end the interaction. She didn't even say a word. And there's... Well, she doesn't... There are no words that are necessary, are there? Well, she doesn't... Lack of... Well, a conviction based on the use of force can't be sustained by only establishing that the victim didn't consent. It's well-established in a way that force has to be proven. And lack of consent does not equal presence of force. The record showed that she was asked if she was able to get away, and she replied, no, I was not. She didn't... But there was no evidence that she attempted to or even tried to or even said no in any respect. And the state in this case also charged and proved, and the court found Mr. Gamboa guilty of the offense of sexual relations within families. And that offense does not have as an element that the state must prove force or threat thereof. So we're not challenging that conviction. But here, even accepting her testimony in the light most favorable to the state, the evidence to support an essential element of the crime of criminal sexual assault, the use of force or threat thereof, the court... The state did not prove that element, and this court should reverse Gamboa's criminal sexual assault conviction. Second, the trial court abused its discretion in admitting evidence of MG's undisclosed, unreported, uncharged allegations that Gamboa sexually assaulted her, quote, a lot between September 2019 and March 2021. During her trial testimony, MG's trial testimony, the state elicited evidence of numerous other undisclosed, uncharged acts of sexual assault that MG accused Gamboa of committing over that one-and-a-half-year time period, or 2019 and March 2021. And upon the defense's objection that it was prejudiced by the testimony because the state failed to disclose it in its pretrial notice of intent, the state asserted that it was not seeking to introduce the evidence to show Gamboa's propensity under 115-7.3b, but to show why MG failed to report any of the abuse, to show the familiarity between MG and Gamboa, and to corroborate MG's statements regarding the charge act that Gamboa was on trial for. And the court allowed the evidence, not for propensity, but because it found the evidence relevant to establish, quote, the relationship of the parties, degree of familiarity, et cetera. And why, counsel, excuse me, counsel, and why was this error? Now, we know this wasn't preserved, so we're first talking about plain error here, so we have to determine whether or not there was error. Why was this error? The court made the determination as to why it was admitted. Well, there's three reasons that this was error. First, the state didn't disclose, like I said, the evidence in advance of trial. This defense didn't know about it until MG started testifying, and so the defense was unable to investigate any of those allegations prior to MG's testimony. Second, her testimony as to these other alleged acts was unreliable, where her accusations lacked specificity and were very vague. She couldn't recall important details such as when or how often it happened, merely saying that it happened a lot and that she, quote, blocked it out during an entire year and a half period of time. And the third reason is that a trial court, considering the admission of other evidence, has to engage in a meaningful assessment of the probative value of the evidence versus its prejudicial impact, and the court below did not do that in this case. I'm sorry. Here, the admission of the allegations of numerous amounts of uncharged acts which were in every respect certainly was prejudicial because it unfairly compromised Gamboa's ability to defend himself. The court had already allowed the state to introduce evidence of MG's allegation that Gamboa sexually assaulted her on May 5th, 2019, to show his propensity to commit criminal sexual assault. And yet, the court then also let the state present additional, like I said, undisclosed, unreported, uncharged other crimes evidence that was essentially an unlimited amount of it. And the admission of these vague claims that Gamboa sexually assaulted her a lot over that year and a half period without reference to any specific incidents unfairly prejudiced Gamboa. And this court, she reverses convictions and remanded for a new trial on that basis. Had to unfairly prejudice him. Isn't the standard we're using here an abuse of discretion? Yes, it is an abuse of discretion. And we're the court abused his discretion because this evidence was not disclosed. He had no ability to investigate it. And there were no, it was very vague. There was nothing he could possibly examine her on even about it. Justice Stegman, apologies for interrupting. We've lost Justice Zinoff. She lost electricity at the house and she's getting ready to sign back on. So she'll be on momentarily. If we can pause for a second. Oh, sure. Thank you, Mr. Bailiff. I think that would be a good idea, Ms. Levy. We don't want Justice Zinoff to not be able to hear your argument. So let's pause now and we will proceed as soon as Justice Zinoff is able to join us. We'll just pause and wait for that to happen. Okay. Ms. Levy and Mr. Goldman, I'm going to go ahead and put you back in the waiting room and we'll bring you back in. I hope she can get internet. Pardon? I hope she can get internet if she lost electricity. She said the lights are back on now. So she's hoping. Okay. Thanks for catching that, David. I saw her. We lost her, but I didn't say anything. I don't know what to do either. Yeah. Unfortunate. And I want to mention, Ms. Levy, we apologize to you because it was your argument that was interfered with. And as best you can, try to pick up and carry it from there. And I'm sure you'll be able to do it as an experienced advocate. Thank you. Briefly, related to the trial court, I'm sorry, trial counsel failed to provide Gamboa with effective assistance where counsel did not present evidence that Gamboa was acquitted of criminally sexually abusing MG in 2014. Once the trial court allowed the state to admit evidence of the May 5th, 2019 sexual assault to show propensity, Gamboa's trial counsel who was aware of the did not seek to introduce the results of that trial into evidence to rebut it. And in that case, during a trial, upon the defense moving for a directed verdict, the court found MG not to be credible and acquitted him of the offense. In People v. Ward, the Supreme Court held that fairness requires evidence of an acquittal to be admissible under 115-7.3, because the truer fact cannot properly perform its function of assessing the other crime's evidence without being given a proper context. And trial counsel's failure to give that proper context here was not sound strategy and objectively unreasonable. Let me ask you a comment on what the state wrote in its brief on this point. Here's the quote. The fact that the defendant was acquitted obviously helps him, but the fact that he was accused of abusing a 12-year-old does not. One cannot be acquitted without first being accused, and so those facts are inextricably intertwined. Counsel knew his client knew the facts and was entitled to make a strategic decision regarding whether he wanted to introduce this evidence. Why isn't that a reasonable assessment? Because it's not sound strategy. Of course, the evidence that she'd accused him before and he was found not guilty is relevant to his guilt and her accusation in the instant case. And at the end of trial, I'm sorry, at the close of the state's evidence, the defense did not put on the defense but sought to introduce transcripts of a hearing for protection order related to this case to show that judge didn't believe MG to be credible. So in a way to sort of impeach her, which is not how you impeach a witness since she wasn't testifying. He just wanted to introduce it in evidence at the end of trial. And so wanting that evidence in a way that he couldn't get it in a hearing shows that he wanted a proper context for the court's assessment of her credibility, and he could have done that with the introduction of the prior acquittal. And for that reason, we're asking this court to reverse Gamboa's criminal sexual assault conviction or alternatively reverse his conviction and remand for a new trial. And if I have any time left, I would like to save it for rebuttal, please. Say again, if what? If I have any time left, I would like to save it for rebuttal, please. Well, you certainly will have time rebuttal again. Thank you, counsel. Thank you on behalf of the state jury make your argument at this time, sir. Thank you, your honor. Your honors, I will simply address this in the order in which counsel brought them up. Beginning first with the allegation that the state failed to prove the element of force beyond a reasonable doubt. I believe your honors all referred to the facts that support this element. MG testified on numerous occasions about the size and the strength of the defendant in this case. She described on multiple occasions how she felt she could not get away. She felt she could not get up and specifically tied this to the fact that he was on top of her and larger than her. So all of these things taken together is exactly the kind of evidence that shows that the defendant was using his superior strength and size to overcome the will of the victim. Now, the. The facts that defense counsel describes that she did not fight that she did not call out that she did not say no. The case law on this is very clear. You don't have to say no. You don't have to fight back. You don't have to essentially subject yourself to the possibility of really severe injury by trying to fight off a much larger assailant. So under these circumstances, I would argue that a reasonable trier of fact could look at all of these circumstances and determine that she was subjected to force in the manner in which the defendant performed his sexual assault on her. Moving to the second argument, unless there's any further questions on the on the 1st, moving to the 2nd argument that the evidence of these vague allegations that she had been enduring abuse for some time was plain air. This was not used for propensity purposes. The court was presented with an argument that it was used for the alternative purpose of establishing the the familiar between the victim and the defendant, corroborating her and explaining why she failed to report the abuse. Now, in a normal trial, some of the arguments that defense counsel raises might be a little bit more persuasive because I think that it's a fair. Consideration for the court and for this court as to whether or not a jury will be able to abide by the rules and orders of the court and set aside evidence of this kind to only consider it for one narrow permissible purpose. But here this is a bench trial and the court is an experienced jurist and is fully capable of using the evidence in only a permissible manner. And so the danger of unfair prejudice in this case is significantly reduced just due to the fact that it's a judge as a trier of fact instead of members of the jury who might be overcome by the hearing this kind of gruesome evidence for the first time. And then the court take a recess to consider this and then came back and actually ruled upon it. That's correct. I believe the state had presented the court with a couple of cases and the court took a recess to review those cases and think about this and ultimately came back and decided in favor of many of the evidence. And your honors, if there are no further questions on that second argument, I'll move to the third. The third argument being that the this information about a prior acquittal should have been should have been admitted by defense counsel. Justice Steigman already quoted the main thrust of my argument that this was trial strategy. We don't have the details of this acquittal. We don't have the details of what went on in that case. The trial attorney knew his client, knew the facts, knew the circumstances of the acquittal and was able to make a strategic decision about whether or not he wanted this evidence to come in. And this wasn't a situation in which he simply let the situation pass by him. He was confronted with the state about to perhaps go into the circumstances of the events that led ultimately to this acquittal. And he objected. That shows a very clear exercise of his discretion. That shows that he was employing a deliberate strategy rather than perhaps inadvertently letting this pass him by. And because there was an accusation inherent in the acquittal, counsel was able to make a fair determination that he didn't want any of this to come in. And although reasonable minds could differ about whether or not that is the correct choice, ultimately, this is the kind of decision that trial attorneys should be allowed to make based upon their sound professional judgment. Based upon all of those reasons, we would ask that this court affirm the trial court and unless there are any further questions, I will simply for the remainder rest upon the strength of my brief. Thank you. Thank you, counsel. Ms. Levy, on behalf of the appellate, you may have a rebuttal argument at this time. Thank you. Just very briefly. Regarding the reasonable doubt issue, I don't see in the record where MG testified numerous times that his size and strength, she was overcome by his size and strength. She testified regarding one of the prior undisclosed incidents, and she didn't know when, that on one occasion, on that occasion, she said it happened in the living room that she was unable to get up because of his size and strength. But she did not testify the specific incident that she was unable to get up because of her size or strength. She testified that she was scared that if she did get up, he would kick her out. And her basis for saying that, or as that being credible, is blind by the record where she testified that he did not kick her out after she made allegations in May of 2019. She left on her own. And then when she wanted to come back in September, he let her come back and did not request or demand that she, or even ask her to drop the charges against him. So there's no basis for her to believe that he would kick her out when he didn't kick her out the first time and then let her come back and live with him. One question about what you've just been arguing. This is a bench trial in which an experienced jurist was able to see both the alleged victim and the defendant in court. And wasn't the court then able to draw an inference with regard to size and respective strengths and use that with regard to the court's evaluation of the victim's testimony? Correct. Yes, of course. But regarding this particular incident that he was on trial for, she did not testify that she was overcome by his size or strength, or superior size or strength. She said that she just didn't get up or felt like she couldn't get up because she was afraid of being kicked out of the apartment. And there's no evidence that she was confined in her bedroom. The door was open. He asked her to take off her underwear, which she did without saying no or anything at all. And the court, this sort of brings the second issue into the first, but the court in finding, I'm sorry, the state in its closing argument relied on the use of force during the prior incidents, the undisclosed incidents, to argue that the same happened in this event, in this occasion. And the state used that evidence in arguing that way as propensity evidence when it didn't come in for that purpose. But the state still used it as propensity evidence in closing. And regarding the third issue, the trial counsel's effectiveness, we do have the details of the acquittal because post-trial counsel attached the transcript of that ruling to the post-trial motion. So we do know what happened in that case. Upon the defense's motion for a directive verdict, the court found him not guilty and explicitly said that MG was not credible. And even if defense counsel had a strategy to not admit the evidence of the acquittal, that strategy was not sound or reasonable. And it has to be in order for counsel to be effective. And there are other questions. Thank you, counsel. The court will take this matter in advisement, issue a decision in due course, and we'll now stand in recess in this case.